JOURNAL ENTRY AND OPINION
Appellants the Village of Bratenahl and its tax administrator, Shirley Oberlin, appeal from an order of the common pleas court. The court reversed an administrative order of the Bratenahl Board of Review upholding a municipal residence tax assessment on appellee taxpayer Joseph Tetlak. The court explained that the administrative order was not supported by "the preponderance of substantial, reliable, and probative evidence." R.C. 2506.04.
The parties' dispute relates to the characterization of certain income received by Tetlak from Willow Hill Industries, Inc. in the calendar years 1990, 1991, and 1992. Tetlak resides in Bratenahl and was employed by Willow Hill, a Subchapter S corporation in which he owns stock, at its facility located in the City of Willoughby, Ohio. He received a salary from the corporation, in addition to a share of its earnings each year during this period. Tetlak paid municipal residence tax on his salary, but not on the share of the earnings received from the corporation.
In 1994, Tetlak received three "Reports of Audit Adjustments," which assessed a total of $8,468 in additional residence taxes against him. The adjustments imposed a residence tax on the funds received by Tetlak from the earnings of the Subchapter S corporation.
Tetlak filed a protest challenging the audit adjustments. By letter dated April 27, 1994, Central Collection Agency ("CCA"), acting as tax administrator, denied the protest and upheld the tax assessments resulting from the audit adjustments. The letter stated that the distributions were subject to tax as the net profits earned by the "owner of a nonresident unincorporated business entity" and were not excluded as "dividends from intangible property."
Tetlak appealed this decision to the Bratenahl Board of Review. The Board conducted a hearing. Six months later, a board member circulated a letter recommending that the Board affirm the tax administrator's ruling which upheld the adjustments and assessments. The letter stated that the distributions (1) were taxable "salaries, wages, commissions and other compensation," (2) were not exempt "dividends and other revenue from intangible property", (3) were a form of "unrealized compensation," rather than income from the ownership of shares, and (4) were subject to tax as the net profits earned by the "owner of a nonresident unincorporated business entity." Approximately five months thereafter, the Board affirmed the tax administrator without opinion.
Tetlak filed an administrative appeal from the Board of Review's decision in the common pleas court pursuant to R.C.2506.01. Tetlak's brief argued, inter alia, that the Board's decision was contrary to Misrach v. Montgomery (1993), 90 Ohio App.3d 187. See also Alspaugh v. City of Rocky River (May 28, 1997), Cuyahoga Common Pleas No. CV-320089, unreported, wherein the common pleas court had previously rejected such taxation under identical circumstances. The common pleas court reversed the Board of Review's decision, finding that it was not supported by "the preponderance of substantial, reliable, and probative evidence." (Journal Entry at pp. 4-5.)
Appellants appeal from the order of the common pleas court. They raise six assignments of error, but do not separately brief or argue them as required by App.R. 16(A)(7). This court granted CCA leave to file an amicus brief.
Each party makes various arguments to support its claim. Appellants now argue that Bratenahl Codified Ordinance Section 171.0501(a) imposes a tax "[o]n all salaries, wages, commissions and other compensation earned on or after January 1, 1981, by residents of the Village."[1] (Emphasis added.) Appellants contend on appeal that the dispute funds constituted "other compensation" paid to appellee as a result of his employment.
Appellee argues that the disputed funds constitute "intangible income" excluded from municipal taxation under R.C. 718.01. R.C.718.01 provides in part:
 (F) No municipal corporation shall tax any of the following:
* * *
 (3) Except as otherwise provided in division (G) of this section, intangible income.[2]
R.C. 718.01(A)(4) defines intangible income as:
 * * * income yield, interest, dividends, or other income arising from the ownership, sale, exchange, or other disposition of intangible property including, but not limited to, investments, deposits, money, or credits as those terms are defined in Chapter 5701 of the Revised Code. (Emphasis added.)
R.C. 5701.06(A) defines "investments" as "Shares of stock in corporations, associations, and joint-stock companies, under whatever laws organized or existing * * *."
The Supreme Court, when recently holding that lottery winnings did not constitute "intangible income," because, unlike shares of stock, a lottery ticket is not an "investment," stated as follows:
 With this in mind, we cannot find that R.C. 718.01(A)(4)'s definition of `intangible income' to include games or schemes of chance. Semantics aside, lotteries or lottery tickets are not investments, deposits, money or credits, nor are they of the same class, kind or nature of such items of intangible property. * * * Absent a clear intention by the General Assembly, we cannot place what is essentially gambling income into the same fortress of protection from municipal taxation erected for income from such sources as stocks.
Id. at 512. Whether the protection from municipal taxation of income from stocks is a "fortress" or a sandcastle remains to be seen.
Each of the parties' respective arguments could be correct depending on the facts of a particular case. Not surprisingly, each case cited by the parties indicates that how one characterizes distributions from an S Corporation is a question of fact to be determined on a case-by-case basis. See Misrach v.City of Montgomery (1993), 90 Ohio App.3d 187, 189-190; Alspaughv. City of Rocky River, supra at pp. 7-9, and Myers v. City ofAkron Income Tax Board of Review (Nov. 30, 1992), Summit Common Pleas No. CV 92 06 2326. unreported at p. 3. The common pleas court held likewise in the case at bar. (Journal Entry at pp. 4-5).
On appeal, for the first time, appellants now contend the taxpayer had the burden of proving whether the distributions were exempt "intangible income" as opposed to taxable "other compensation." They argue that the taxpayer should lose because there is no evidence in the record on this issue. This argument might have more force if it had ever been asserted during the course of the administrative proceedings. It is too late in this stage of these proceedings to make such an argument for the first time on appeal.
The record in this case, like that in Alspaugh, indicates that the determination to impose the tax adjustment was based on "an abstract interpretation of the Revised Code without consideration of the limitation that the Revised Code places on the taxing power of municipalities or the facts surrounding the distribution." Id. at p. 8. The letter denying the taxpayer's protest mentioned no factual dispute whatsoever and completely ignored R.C. 718.01, which expressly limits municipal authority to tax "dividends, or other income arising from the ownership * * * of intangible property including, but not limited to, investments."
The letter made two arguments based on municipal ordinances. It asserted that the distributions were subject to tax as the net profits earned by the "owner of a nonresident unincorporated business entity." Finally, it argued that the income was not exempt from taxation as "dividends from intangible property," because S Corporations were not identified by statute as a source of intangible income.
These arguments are unpersuasive because an S Corporation is a corporation and not an "unincorporated business entity." Kemp v.Raudabaugh (1991), 76 Ohio App.3d 488, 491:
 A corporation designated Subchapter S for federal income tax purposes is a corporation for all purposes under Ohio law and `Subchapter S' has no meaning with respect to the [municipal ordinance which makes no express distinction on this basis]
As in Kemp, Bratenahl Codified Ordinance Section 171.0306 makes no distinction between Subchapter S and other corporations. It defines "corporation" to mean "a corporation or joint stock association organized under the laws of the United States, the State of Ohio, or any other state, territory, or foreign country or dependency."
Moreover, distributions from Subchapter S corporations may be excluded from residence tax as "dividends, or other income arising from the ownership * * * of intangible property including, but not limited to, investments" under R.C. 718.01.Misrach, supra; Alspaugh, supra.
As noted by the trial court, the exemption in Bratenahl Codified Ordinance Section 171.0901(h) cited by the tax administrator applies to "dividends or other revenue from intangible property." Contrary to the tax administrator's argument, however, this provision applies to "intangible property," rather than "intangible income" as defined by R.C.1707.01. (Id. at p. 2. n. 1.) Moreover, it applies to "dividends or other revenue from intangible property." Thus even if the distribution were not a "dividend," it did not exclude coverage as "other revenue." Accordingly, the cited basis for denying the taxpayer's protest was incorrect.
Absolutely nothing in the record ever gave the taxpayer any notice that the issue was a question of evidence rather than an interpretation of the law. This newly minted contention was not cited as the basis for the original adjustments, was not cited as the basis for the denial of the original protest, and was not cited as the basis for the affirmance by the Board of Review. For the first time appellants now further argue that the taxpayer was obligated to offer proof that the distributions could not later be classified as "other compensation" as opposed to "intangible income" or whatever else the taxing authority might later deem, or claim that it deemed, the distribution to be.
It is one thing for administrative agencies to investigate, initiate complaints, conduct proceedings, enter judgment, and review themselves. It is quite another to revise, after the fact, what is expected of the taxpayer. There is a responsibility to ensure a just resolution of the dispute, rather than simply to maximize collections.
When the taxpayer sought an opportunity to present evidence in the common pleas court, appellants argued that "no factual issues are (or were) in dispute." (Brief in Opposition to Application to Present Additional Evidence at p. 2.) The common pleas court was fully justified in relying on this representation. Cf. Shapely,Inc. v. City of Norwood Earnings Tax Bd. of Appeals (1984),20 Ohio App.3d 164. Appellants will not now be heard in this court to raise for the first time precisely the opposite contention and use it as the basis for reversal.
Moreover, we agree with the very thoughtful analysis by Judge Griffin in Alspaugh when this argument was raised by another CCA jurisdiction:
 The question to be determined in every case of an S corporation distribution is whether the distribution is "income arising from ownership" or whether, in fact, it arises because of services rendered.
 The Court in Misrach implicitly recognized that a Subchapter S corporation is a hybrid entity. It has the limited liability of a corporation but has the tax advantages of an unincorporated association such as a partnership. See also Rientjes v. Rientjes, (October 18, 1995). Hamilton App. No. C-940787, unreported; Griffithv. Griffith, (February 23, 1990), Geauga App. No. 88-G-1477, unreported. Moreover, the shareholders of a Subchapter S corporation are often afforded more control over the, daily operation of the corporation than shareholders o[f] an ordinary corporation. See R.C.1701.591. Thus not all distributions to the shareholders of a Subchapter S corporation necessarily represent payments arising solely or primarily because of the amount of capital invested in shares of a corporation.C.f. Misrach v. City of Montgomery,90 Ohio App.3d at 188-190.
Accordingly, a city may tax distributions to appellants from their Subchapter S corporations if the city determines that the distributions from the Subchapter S Corporation constitute payments resulting from services rendered to or for the corporation. Seeid. This determination must be supported by "the preponderance of substantial, reliable, and probative evidence on the whole record". See R.C. 2506.04.
The City's Tax Administrator did not expressly determine for what reasons the distributions from appellants [sic] Subchapter S corporations were made to appellants. * * *
 Assuming that the Tax Administrator * * * [determined] that the income was compensation for services or a form of wage, such a decision is not supported by the preponderance of substantial, reliable, and probative evidence. There is absolutely no evidence in the record concerning the nature of the distribution to appellants. Thus, from the evidence in the record, one could not conclude the true basis of the distributions to the appellants. Consequently, assuming that the Tax Administrator's decision is an implicit determination that the distributions to appellants were in reality wages, the decisions of the City's Tax Auditor and the Board of Review are not supported by the preponderance of substantial, reliable, and probative evidence on the whole record. As a result, the decision of the Board of [R]eview must be reversed. See R.C. 2506.04; Kisil v.City of Sandusky, [1984], 12 Ohio St.3d [30] at 34; Reedv. Vermillion Local School District, [1992], 83 Ohio App. 3d [323] at 326.
Id. at 7-9.
For all of these reasons, appellants' assignments of error are not well taken, and the judgment of the trial court is hereby affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellants his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., LEO M. SPELLACY, J., CONCUR.
 ____________________________ DIANE KARPINSKI PRESIDING JUDGE
[1] Appellants never cited this subsection of the ordinances, first having cited "171.0051(d)(2)" [sic, 171.0501(d)(2)] and then citing "171.0501."
[2] R.C. 718.01(G) provides:
 (G) Any municipal corporation that taxes any type of intangible income on the effective date of this amendment pursuant to Section 3 of Amended Substitute Senate Bill 238 of the 116th General Assembly, may continue to tax that type of income after 1988 if a majority of the electors of the municipal corporation voting on the question of whether to permit the taxation of that type of intangible income after 1988 vote in favor thereof at an election held on November 8, 1988.
Appellants have cited no ordinance allowing taxation of "intangible income" or that any such tax was continued by majority vote. Bratenahl Codified Ordinance Section 171.0901(h) expressly exempts from residence tax "dividends and other intangible income."